IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ALABAMA

CARNIVAL CORPORATION

VERSUS

BAE SYSTEMS SSY ALABAMA PROPERTY
HOLDINGS, LLC, BAE SYSTEMS                    CIVIL ACTION
SOUTHEAST SHIPYARDS ALABAMA LLC,
SIGNAL SHIP REPAIR, LLC, THE UNITED           NO. 13-314-CG-C
STATES ARMY CORPS OF ENGINEERS,
BERNADETTE W. JOHNSON, individually and
as Surviving Wife and as Administratrix and
Personal Representative of the Estate of JOHN R.
"BUSTER" JOHNSON, and JASON
ALEXANDER EWING

## CARNIVAL'S OPPOSITION TO THE UNITED STATES' MOTION TO DISMISS

Carnival Corporation opposes the United States' motion to dismiss Carnival's declaratory judgment action for the following reasons:

- The United States is a proper party and should present its claim in this litigation involving the other parties and claims arising from the same incident;

- Subject matter jurisdiction exists and sovereign immunity is waived pursuant to the Suits in Admiralty Act, 46 U.S.C. § 30901 et seq., or the Public Vessels Act, 46 U.S.C. § 31101 et seq.;

- A declaratory judgment may properly be issued to address tort liability in an existing case or controversy; and

- The United States has no cause of action under the Rivers and Harbors Act; and even if it did, Carnival's declaratory judgment action does not preempt the United States' claim.

## I) Introduction

The United States is a proper party to this case and should be present in this litigation. At least six parties, including Carnival and the United States, have claims resulting from the April 3, 2013, incident in which four mooring bollards at the BAE shipyard gave way, causing the CARNIVAL TRIUMPH to go adrift. As a result, Carnival commenced this action, removed the death and personal injury claims to this Court, and asked that both proceedings be consolidated. It did so because this Court is a proper venue and has jurisdiction for all claims arising from this incident, and to avoid multiple lawsuits in different courts, inconsistent rulings, and unnecessary delay and expense. This action serves the interests of justice by having all of these related claims determined concurrently in the same court, and it presents no issues of forum shopping or preemption of any parties' claims.

The United States is the sole party with potential damage resulting from BAE's bollard failures that has not yet asserted its claim. Carnival, Signal, Johnson, and Ewing have all appeared and presented claims in at least one of the two pending actions in this Court arising out of the incident. Because the United States' claim arises out of the same incident and will require substantially the same discovery and liability analysis, it is a proper party and should present its claims in this litigation.

2

**II)** **Jurisdiction exists pursuant to the Suits in Admiralty Act or the Public Vessels Act**

Carnival asserts that its declaratory judgment action falls within the court's admiralty jurisdiction under 28 U.S.C. §1333 and 46 U.S.C. § 30101.[1]  Carnival did not specify a statute waiving sovereign immunity because it has not presented a tort claim against the United States that would require a waiver of immunity.

Should Carnival's declaratory judgment action require an immunity waiver, such waiver is statutorily provided by the Suits in Admiralty Act, 46 U.S.C. § 30901 et seq., or alternatively, the Public Vessels Act, 46 U.S.C. § 31101 et seq. Both acts waive the government's sovereign immunity to permit a civil action against the United States over which there is admiralty jurisdiction.

Specifically, the Suits in Admiralty Act, 46 USC § 30903, provides:

Waiver of immunity
    (a) In general. **In a case in which, if a vessel were privately owned or operated,** or if cargo were privately owned or possessed, or if a private person or property were involved, **a civil action in admiralty could be maintained, a civil action in admiralty in personam may be brought against the United States** or a federally-owned corporation. In a civil action in admiralty brought by the United States or a federally-owned corporation, an admiralty claim in personam may be filed or a setoff claimed against the United States or corporation. (emphasis added).

---

[1] Doc. 1 at ¶ 31.

Similarly, the Public Vessels Act, 46 USC § 31103, provides:

Waiver of immunity
    (a) In general. A civil action in personam in admiralty may be brought, or an impleader filed, against the United States for—
        (1) damages caused by a public vessel of the United States; or
        (2) compensation for towage and salvage services, including contract salvage, rendered to a public vessel of the United States.
    (b) Counterclaim or setoff. If the United States brings a civil action in admiralty for damages caused by a privately owned vessel, the owner of the vessel, or the successor in interest, may file a counterclaim in personam, or claim a setoff, against the United States for damages arising out of the same subject matter.

The Corps of Engineers' dredge WHEELER is a public vessel because it is owned and operated by the United States for public purposes (dredging public waterways).[2]

Because the incident underlying this litigation falls within admiralty jurisdiction, one of these statutes lifts the bar of sovereign immunity for Carnival's action. As stated by the Eleventh Circuit, "the sovereign immunity waivers of the [Public Vessels Act] and [Suits in Admiralty Act] now cover all relevant admiralty

---

[2] *Taghadomi v. United States*, 401 F.3d 1080 (9th Cir. 2005) (public vessel is one owned or operated by the United States and used in public capacity); *Tucker v. Cascade Gen., Inc.*, 2011 U.S. Dist. LEXIS 123317, 2 (D. Or. 2011) (dredge ESSAYONS is a public vessel); *Woody v. American Heavy Industries, Inc.*, 1995 AMC 645 (E.D. Va. 1994)(dredge MCFARLAND was a public vessel ); *Rodriguez v. United States*, 204 F.2d 508 (3d Cir. 1953) (dredge was a public vessel ); *GULFMEADOWS -- DREDGE NEW ORLEANS.*, 1956 AMC 1794 (E.D. Pa. 1953) (dredge NEW ORLEANS was a public vessel).

claims involving public vessels. Claims seeking relief for damages caused directly by a public vessel, or by the negligent operation thereof, fall under the PVA. The SAA covers all remaining admiralty claims, including those simply 'involving public vessels.'"[3] The United States Supreme Court has held that admiralty claims involving public vessels that are beyond the scope of the Public Vessels Act fall within the scope of the Suits in Admiralty Act.[4]   Moreover, even if this court determines that the WHEELER is not a public vessel, but a merchant vessel doing commercial operations as if it was privately owned, then the United States immunity is waived under the Suits in Admiralty Act.

Because Carnival's declaratory judgment action falls within the court's admiralty jurisdiction, it falls within the scope of the Suits in Admiralty Act as "a civil action in admiralty," and there is no need to consider whether it falls within the scope of the Public Vessels Act.   However, in the alternative, the Public Vessels Act also waives the government's sovereign immunity and permits Carnival's action.   If necessary, Carnival requests leave to amend its complaint to specify this additional statutory basis for jurisdiction.

---

[3] *Uralde v. United States*, 614 F.3d 1282, 1286 (11th Cir. 2010).

[4] *United States v. United Continental Tuna Corp.*, 425 U.S. 164, 180-181 (1976); see also *Marine Coatings v. United States*, 71 F.3d 1558, 1564 (11th Cir. 1996) (holding that "recovery on a maritime repair lien is not a claim authorized by the provisions of the Public Vessels Act. Consequently, this case falls within that 'category of claims involving public vessels [that are] beyond the scope of the Public Vessels Act,' and, as such, are covered only by the Suits in Admiralty Act.").

## III)   A declaratory judgment may properly be issued to determine tort liability in an existing case or controversy

Nothing in the Declaratory Judgment Act prohibits a court from deciding non-liability in a tort case.  The Act provides that:

> [i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[5]

The Act also lists types of actions that may not be subject to a declaratory judgment.[6]  The determination of non-liability for a tort is not an excepted cause of action.  A plain reading of the Declaratory Judgment Act permits its application here and is consistent with the conclusions of other courts that "there is no outright prohibition in the Declaratory Judgment Act against the hearing of tort actions,"[7] and "The Declaratory Judgment Act . . . allows a party . . . who expects to

---

[5] 28 USC § 2201.

[6] *Id.* ("except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986 [26 USCS § 7428], a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930 [19 USCS § 1516a(f)(10)]), as determined by the administering authority").

[7] *United Ins. Co. of Am. v. Harris*, 939 F. Supp. 1527, 1532 (M.D. Ala. 1996).

eventually be sued, to determine his rights and liabilities without waiting for his adversary, the presumptive plaintiff, to bring suit."[8]

Apparently recognizing the lack of any statutory prohibition against applying the Declaratory Judgment Act in this case, the United States requests that the court exercise its discretion to decline to hear Carnival's statutorily permissible action. While some courts have declined to hear tort cases involving a declaration of non-liability, the reasoning supporting those decisions is not present here.

All of the cases relied upon by the United States involve situations where a declaratory judgment action was brought to circumvent a parallel proceeding by seeking a particular forum or gaining some other procedural advantage.[9] Those factors are not present here. The United States has no pending parallel state or federal proceeding, and would likely file suit in this Court. Additionally, Carnival's declaratory judgment is not a stand-alone action, but accompanied its

---

[8] *DeBartolo v. HealthSouth Corp.*, 569 F.3d 736, 741 (7th Cir. 2009) (citing *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 248 (1952); *Ceres Terminals, Inc. v. Indus. Comm'n of Ill.*, 53 F.3d 183, 185 (7th Cir. 1995)); see also *NewPage Wis. Sys. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC*, 651 F.3d 775, 777 (7th Cir. 2011) ("declaratory-judgment suits often are defensive in nature").

[9] *Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1167 (7th Cir. 1969)(parallel suits in both state and federal courts); *Sun Oil Co. v. Transcontinental Gas Pipe Line Corp.*, 108 F. Supp. 280, 282 (E.D.Pa. 1952)(multiple parallel suits in a different federal district court); *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991)(parallel suit in state court); *United Ins. Co. of Am. v. Harris*, 939 F. Supp. 1527, 1529 (M.D. Ala. 1996)(pre-suit discovery had been initiated in state court); *Hardware Mut. Casualty Co. v. Schantz*, 178 F.2d 779, 780 (5th Cir. Tex. 1949)(the district court's discretionary dismissal of a declaratory judgment act was reversed on appeal).

complaint against the two BAE entities that are responsible for the breakaway and all resulting damages. The declaratory judgment action merely seeks to have all of the claims resulting from the breakaway presented in a single proceeding to eliminate a multiplicity of litigation, duplication of discovery, and the potential for inconsistent results.[10] It was not filed as a means of "procedural fencing" or forum shopping. In fact, this Court is the proper and natural forum for this litigation, and all of the other significant claims arising out of the incident are already pending in this court.

Liability for damages arising from the breakaway will be decided in this Court. All parties already are present except the United States. The interests of justice will best be served by having the United States' claim heard at the same time. As the court stated in *Ditzler v. Spee*, "as a matter of fundamental justice and sound judicial administration, where there are common liability issues and it is obvious that a claim will be asserted . . . it is clearly within the discretion of the trial court to entertain an action for a declaratory judgment compelling the liability issues to be determined only once."[11]

---

[10] See *States S.S. Co. v. Featherstone*, 240 F. Supp. 830 (D. Or. 1965) (A district court has the discretion to grant a declaratory judgment to a prospective defendant in a negligence action when "it would be in the interest of justice."

[11] *Ditzler v. Spee*, 288 Minn. 314, 317 (Minn. 1970); see also 10B Wright, Miller, & Kane, Federal Practice and Procedure § 2765, at 639-40 (3d ed. 1998).

Because tort actions are not excluded from the Declaratory Judgment Act and the Court may exercise its discretion to decide these claims, the interests of justice and sound judicial administration favor having the United States' claim determined with the other claims arising from the breakaway. The considerations underlying the cases dismissing declaratory judgment actions in tort settings are simply not present here. Moreover, in the absence of any parallel proceedings, in state or federal court, dismissal of the declaratory judgment action against the United States may amount to an abuse of discretion.[12] As with the motion to dismiss filed by Johnson and Ewing, the Court should decline the invitation to exercise its discretion to dismiss this declaratory judgment action.

## IV)   No cause of action exists under the Rivers and Harbors Act

Section 408 of the Rivers and Harbors Act does not provide a cause of action for damage to a dredge owned and operated by the United States to dredge channels in rivers because a dredged channel is not a "work" protected under the Act.[13]

In pertinent part, Section 408 of the Rivers and Harbors Act provides:

---

[12] *Federal Reserve Bank v. Thomas*, 220 F.3d 1235, 1247 (11th Cir. 2000); *Nationwide Prop. & Casualty Co. v. Lacayo,* 2008 U.S. Dist. LEXIS 89341 *4 (M.D. Ala. 2008) (citing *Federal Reserve* as establishing a *per se* rule that a district court abuses its discretion by dismissing a declaratory judgment action when there is no underlying state court proceeding).

[13] *United States v. The Agioi Victores*, 227 F.2d 571 (9th Cir. 1955). Because the Army Corps does not have a cause of action under Section 408, the remedies expressly provided under Section 412 are also inapplicable.

It shall not be lawful for any person or persons to . . . injure . . . or in any manner whatever impair the usefulness of any **sea wall, bulkhead, jetty, dike, levee, wharf, pier, <u>or other work</u>** built by the **United States**, or any piece of plant, floating or otherwise, **used in the construction of such <u>work</u>** under the control of the United States, in whole or in part, for the preservation and improvement of any of its navigable waters . . . .[14]

In *United States v. The Agioi Victores*,[15] the Ninth Circuit Court of Appeals squarely decided that damage to a Corps of Engineers dredge does not create a cause of action under the Rivers and Harbors Act. In that case, a collision occurred between a ship and a dredge used for dredging a channel in the Columbia River.

The Ninth Circuit refused to allow a claim under Section 408 because the listed "works" (sea wall, bulkhead, jetty, dike, levee, wharf, pier) are all physical structures, and "a dredged channel has no resemblance to any of the works specified in the section."[16] The court further rejected the United States' argument that a ship channel was considered an "other work" within the meaning of Section 408. The court held that a "dredge" was not a "piece of plant, floating or otherwise" under Section 408, reasoning that under the rule of ejusdem generis,[17] a ship channel in a river is excluded from the category of "other work."[18]

---

[14] 33 U.S.C §408 (emphasis added).

[15] 227 F.2d 571 (9th Cir. 1955).

[16] *Id.* at 573.

[17] Black's Law Dictionary, 7th Ed. at 535, defines ejusdem generis as: "[Latin "of the same kind or class"] A canon of construction that when a general word or phrase follows a list of specific

The United States cites no legal authorities for its position that the WHEELER falls within the ambit of Section 408. Instead, it cites only internal management policies that cannot preempt Congress' intent as stated in a federal statute, nor the interpretation of the statute's meaning by a United States court. Allowing the United States' action under the Rivers and Harbors Act would impermissibly expand the limited express statutory remedy provided by Section 408. A court should be reluctant to imply a remedy broader than that expressly provided by Congress.[19]

Because Carnival did not violate Section 408, the United States does not have a strict liability cause of action under the Rivers and Harbors Act that could be preempted by Carnival's declaratory judgment action.

## V) Carnival's declaratory judgment action does not preempt any claims of the United States

Even if the court determines that the WHEELER is a "plant" within the meaning of 33 U.S.C §408 (which is expressly denied), Carnival's declaratory judgment action does not deprive the United States of a cause of action under the Rivers and Harbors Act. The United States has presented no basis for its assertion

---

persons or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed."

[18] *Id.*

[19] *Touche Ross & Co. v. Redington*, 442 U.S. 560 (U.S. 1979).

that this declaratory judgment action deprives it of the ability to assert a claim against Carnival, and Carnival is aware of none.  The United States is free to assert any causes of action that it may have against Carnival or BAE.  Consequently, the United States' motion to dismiss for failure to state a claim should be denied.

## VI)   Conclusion

The United States' claim for damages arising from this incident should be heard in this litigation together with all of the other similarly situated claims.  This Court has jurisdiction pursuant to the Suits in Admiralty Act and/or the Public Vessels Act.  The Declaratory Judgment Act does not prohibit Carnival's suit, and there is no basis for discretionary dismissal.  Additionally, the United States has no claim under the Rivers and Harbors Act that could or would be preempted by this action, nor has it been deprived of any cause of action against Carnival.  For these practical and legal reasons, Carnival respectfully requests that the United States' motion to dismiss be denied.

Respectfully submitted,

s/ *Mary Campbell Broughton*
MARY CAMPBELL BROUGHTON (27867)
**FOWLER RODRIGUEZ**
P. O. Box 40008
Mobile, Alabama 36640
Telephone:  251-344-4721
Fax:  251-343-7503
E-mail:     mcb@frfirm.com
*Counsel for Carnival Corporation*

12

ANTONIO J. RODRIGUEZ (11375)
GEORGE J. FOWLER, III (05798)
A. T. CHENAULT (20747)
MICHAEL A. HAROWSKI (30543)
**FOWLER RODRIGUEZ**
400 Poydras Street, 30th Floor
New Orleans, Louisiana 70130
Telephone:  504-523-2600
Fax:  504-523-2705
E-mails:      ajr@frfirm.com
                   fow@frfirm.com
                   atc@frfirm.com
                   mharowski@frfirm.com
*Counsel for Carnival Corporation*

## CERTIFICATE OF SERVICE

I hereby certify, this 3rd day of September, 2013, that I electronically filed the foregoing document with the Clerk of Court using CM/ECF system, which will send notification of such filing to all counsel on record.


**s/** *Mary Campbell Broughton*