IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CARNIVAL CORPORATION, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CA 13-0314-CG-C |
| | * | |
| BAE SYSTEMS SSY ALABAMA | * | |
| PROPERTY HOLDINGS, LLC., et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |
| | * | |
| SIGNAL SHIP REPAIR, LLC, | * | |
| | * | |
| Counter- and Cross-Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| CARNIVAL CORPORATION, BAE | * | |
| SYSTEMS SSY ALABAMA PROPERTY | * | |
| HOLDINGS, LLC, BAE SYSTEMS | * | |
| SOUTHEAST SHIPYARDS ALABAMA | * | |
| LLC, *in personam*, and M/V CARNIVAL | * | |
| TRIUMPH, her engines, tackle, gear, | * | |
| appurtenances, and all accessories thereto, | * | |
| *in rem,* | * | |
| | * | |
| Counter- or Cross-Defendants. | * | |
| | * | |
| AND | * | |
| | * | |
| BERNADETTE W. JOHNSON, etc., | * | |
| et al., | * | |
| | * | CA 13-0330-CG-C |
| Plaintiffs, | * | |
| | * | |
| vs. | * | |
| | * | |
| CARNIVAL CORPORATION, et al., | * | |
| | * | |
| Defendants. | * | |

## BAE SYSTEMS SOUTHEAST SHIPYARDS ALABAMA LLC'S
## ANSWER AND COUNTERCLAIM

Defendant, BAE Systems Southeast Shipyards Alabama LLC ("BAE Shipyards"), answers the Complaint for Damages and Declaratory Judgment filed by Carnival Corporation ("Carnival") and asserts the following counterclaim against Carnival:

### ANSWER

### ALLEGED PRELIMINARY STATEMENT

BAE Shipyards denies each and every allegation set forth in the Preliminary Statement of Carnival's Complaint and demands strict proof thereof.

### ALLEGED ACTION FOR DAMAGES

1.      BAE Shipyards denies the allegations of paragraph 1.

2.      BAE Shipyards admits the allegations of paragraph 2, but denies that Carnival is entitled to any relief or recovery as to BAE Shipyards.

3.      BAE Shipyards admits the allegations of paragraph 3.

4.      BAE Shipyards admits the allegations of paragraph 4 based upon information and belief.

5.      This allegation is not directed as to BAE Shipyards, and therefore no response is due.  To the extent that paragraph 5 can be construed as asserting any allegation as to BAE Shipyards, then BAE Shipyards denies the allegations of paragraph 5.

6.      BAE Shipyards admits that it is organized under the law of Delaware, and that it has a single member which is a Florida resident corporation.  BAE Shipyards admits that it operates the shipyard where the M/V CARNIVAL TRIUMPH ("TRIUMPH") was moored and also admits that it had a contract with Carnival, the terms of which speak for themselves.

7.     BAE Shipyards admits that the TRIUMPH was moored to Pier K at the BAE Shipyard in Mobile, Alabama on April 3, 2013, undergoing certain services and repairs.  BAE Shipyards further admits that the TRIUMPH was moored with her port side along Pier K and her bow facing toward the river.  BAE Shipyards further admits that Carnival and BAE Shipyards entered into a contract for services for the TRIUMPH, the terms and conditions of which speak for themselves.  Except as hereinabove expressly admitted, the allegations of paragraph 7 are denied.

8.     BAE Shipyards admits that the TRIUMPH broke free from her moorings at Pier K on April 3, 2013 during an Act of God weather event.  Except as hereinabove expressly admitted, the allegations of paragraph 8 are denied as written.

9.     BAE Shipyards denies the allegations of paragraph 9 as written.

10.     BAE Shipyards denies the allegations of paragraph 10 as written.

11.     BAE Shipyards denies the allegations of paragraph 11.

12.     BAE Shipyards denies the allegations of paragraph 12.

## ALLEGED DAMAGES

13.     BAE Shipyards denies each and every allegation of paragraph 13, including subparagraphs 13(a)-(f), and further denies that Carnival is entitled to any relief or recovery as to BAE Shipyards.

14.     BAE Shipyards denies the allegations of paragraph 14.

15.     BAE Shipyards denies the allegations of paragraph 15.

## ALLEGED CAUSES OF ACTION

### COUNT ONE

16.     BAE Shipyards adopts and incorporates by reference as if fully set forth herein its responses to paragraphs 1 through 15.

17.     BAE Shipyards denies the allegations of paragraph 17, including subparagraphs 17(a)-(g).

18.     BAE Shipyards denies the allegations of paragraph 18.

### COUNT TWO

19.     BAE Shipyards adopts and incorporates by reference as if fully set forth herein its responses to paragraphs 1 through 18.

20.     BAE Shipyards admits that BAE Shipyards and Carnival entered into a contract dated February 17, 2013, pursuant to which BAE Shipyards provided certain services to the TRIUMPH, including a place to moor the TRIUMPH.  BAE Shipyards further states that the terms and conditions of the contract speak for themselves.  Except as hereinabove expressly admitted, the allegations of paragraph 20 are denied.

21.     BAE Shipyards denies the allegations of paragraph 21.

22.     BAE Shipyards denies the allegations of paragraph 22.

### COUNT THREE

23.     BAE Shipyards adopts and incorporates by reference as if fully set forth herein its responses to paragraphs 1 through 22.

24.     BAE Shipyards admits that BAE Shipyards and Carnival entered into a contract pursuant to which BAE Shipyards provided certain services to the TRIUMPH.  BAE Shipyards

4

further states that the terms and conditions of the contract speak for themselves.  Except as hereinabove expressly admitted, the allegations of paragraph 24 are denied.

25.     BAE Shipyards denies the allegations of paragraph 25.

26.     BAE Shipyards denies the allegations of paragraph 26, including subparagraphs 26(a)-(f).

27.     BAE Shipyards denies the allegations of paragraph 27.

28.     BAE Shipyards denies the allegations of paragraph 28.

## ALLEGED ACTION FOR DECLARATORY JUDGMENT

29.     Paragraph 29 does not assert any allegation as to BAE Shipyards, and therefore no response is due.  To the extent that paragraph 29 can be construed as asserting any allegation as to BAE Shipyards, then BAE Shipyards denies the allegations of paragraph 29.

30.     BAE Shipyards adopts and incorporates by reference as if fully set forth herein its responses to paragraphs 1 through 28.

31.     BAE Shipyards denies the allegations of paragraph 31.

32.     BAE Shipyards admits the allegations of paragraph 32.

33.     BAE Shipyards is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 33 and therefore denies the same.

34.     BAE Shipyards is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 34 and therefore denies the same.

35.     BAE Shipyards admits the allegations of paragraph 35 based upon information and belief.

36.     BAE Shipyards admits the allegations of paragraph 36 based upon information and belief.

37.     BAE Shipyards denies the allegations of paragraph 37.

38.     BAE Shipyards denies the allegations of paragraph 38.

39.     BAE Shipyards denies the allegations of paragraph 39.

40.     BAE Shipyards denies the allegations of paragraph 40.

41.     BAE Shipyards denies the allegations of paragraph 41.

BAE Shipyards denies each and every allegation of Carnival's Complaint not heretofore expressly admitted, and further denies that Carnival is entitled to any relief or recovery as to BAE Shipyards.  BAE Shipyards further denies that Carnival is entitled to any of the relief requested in the WHEREFORE paragraph of the Complaint.

## AFFIRMATIVE DEFENSES

### First Defense

Carnival's Complaint, each count and cause of action contained therein, separately and severally, fails to state a claim upon which relief can be granted as to BAE Shipyards.

### Second Defense

The incident and damages alleged by Carnival were caused solely by the fault, negligence and/or wrongful conduct of Carnival and/or others for whom BAE Shipyards has no responsibility, which precludes and bars Carnival from recovering against BAE Shipyards.

### Third Defense

If it is found that Carnival suffered damages as a result of the negligence or fault of BAE Shipyards, or anyone for whom BAE Shipyards could or might be responsible, all of which is specifically denied, then the alleged damages of Carnival also were caused by and/or contributed to by and/or aggravated by Carnival's own negligence and wrongful conduct and/or the

negligence and wrongful conduct of others for whom BAE Shipyards is not responsible, and BAE Shipyards is entitled to have any award for recovery mitigated and reduced accordingly.

## Fourth Defense

The incident and damages about which Carnival complains were caused by the negligence and wrongful conduct of others for whom BAE Shipyards is not responsible and over whom BAE Shipyards has no control.

## Fifth Defense

Some or all of Carnival's claims are barred by the doctrine of assumption of the risk.

## Sixth Defense

Carnival's claims as to BAE Shipyards are barred because the incident and damages were caused by an Act of God.

## Seventh Defense

BAE Shipyards asserts the doctrine of intervening cause or superseding cause to the extent that acts of individuals known/unknown or conditions known/unknown or Acts of God may constitute acts or conditions of an independent character over whom/which BAE Shipyards had no duty or ability to control thereby constituting an independent cause resulting in the incident and damages claimed by Carnival.

## Eighth Defense

The incident and damages made the subject of Carnival's Complaint were the result of independent and intervening causes.

## Ninth Defense

BAE Shipyards pleads Acts of God, force majeure and/or unavoidable accident in defense of Carnival's claims.

## Tenth Defense

BAE Shipyards avers that the alleged incident and damages about which Carnival complains were not foreseeable as a matter of law.

## Eleventh Defense

The limitation of liability provision in the contract between Carnival and BAE Shipyards limits BAE Shipyards' total liability to Carnival for the alleged incident to $1,000,000.00.

## Twelfth Defense

The terms of the contract between Carnival and BAE Shipyards contains the following limitation of liability provision, which specifically limits BAE Shipyards' liability to Carnival to no more than $1,000,000.00:

LIMITATION OF LIABILITY:

(a) We undertake to perform work on and dry dock vessels, and provide a berth, wharfage, towage and other services and facilities, only upon condition that we shall not be liable with respect to any one vessel, to its owners, and all other parties in interest, equipment or movable stores, for injury or damages, or for any consequence thereof, directly or indirectly, in contract, tort or otherwise, unless such injury or damage is caused by our negligence or the negligence of our employees. Notwithstanding the foregoing, in no event shall our aggregate liability to the vessel and all such parties, including interest for injuries and damages sustained by them, exceed the portion of the contract price allocable to the equipment giving rise to the claim including the cost of installation at Company's yard provided further in no event shall the Company's liability for all such instances connected with this transaction in aggregate exceed $1,000,000.00.

## Thirteenth Defense

Pursuant to the terms of the contract between Carnival and BAE Shipyards, BAE Shipyards is not and cannot be liable to Carnival for special, incidental, exemplary or consequential damages.

8

**Fourteenth Defense**

The terms of the contract between Carnival and BAE Shipyards contains the following provision in the Limitation of Liability section of the contract, which specifically provides that BAE Shipyards is not and cannot be liable to Carnival for special, incidental, exemplary or consequential damages, as follows:

> (b) NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, IN NO EVENT, WHETHER IN CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, SHALL COMPANY OR ITS SUPPLIERS BE LIABLE FOR SPECIAL, INCIDENTAL, EXEMPLARY OR CONSEQUENTIAL DAMAGES INCLUDING, BUT NOT LIMITED TO LOSS OF PROFITS OR REVENUE, LOSS OF USE OF THE EQUIPMENT OR ANY ASSOCIATED EQUIPMENT, COST OF CAPITAL, COSTS OF PURCHASED POWER OR FUEL, COST OF SUBSTITUTED EQUIPMENT, FACILTIIES OR SERVICES, DOWNTIME COST, OR CLAIMS OF CUSTOMERS OR PURCHASERS FOR SUCH DAMAGES. IF PURCHASER IS FURNISHING THE COMPANY'S SERVICES OR MATERIALS TO A THIRD PARTY BY CONTRACT OR OTHERWISE, THEN PURCHASER SHALL OBTAIN FROM SUCH THIRD PARTY A PROVISION AFFORDING COMPANY AND ITS SUPPLIERS THE PROTECTION OF THE PROCEEDING SENTENCES.

**Fifteenth Defense**

To the extent Carnival seeks recovery for any damages Carnival allegedly sustained or will sustain as a result of any claims asserted by or on behalf of John R. "Buster" Johnson and/or John Alexander Ewing, any such claims for recovery by Carnival and against BAE Shipyards are barred by the exclusivity provisions of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901, et. seq., including but not limited to §§ 905(a) and 905(b).

### Sixteenth Defense

Some or all of Carnival's claims as to BAE Shipyards are barred by the exclusivity provisions of the LHWCA, 33 U.S.C. § 901, et. seq., including but not limited to §§ 905(a) and 905(b).

### Seventeenth Defense

Pursuant to the terms of the contract between Carnival and BAE Shipyards, any alleged claim by Carnival based upon the implied warranty of workmanlike performance has been specifically and completely disclaimed, waived and excluded.

### Eighteenth Defense

The contract between Carnival and BAE Shipyards specifically sets forth the exclusive remedy for Carnival against BAE Shipyards, and disclaims, excludes and bars all other remedies and warranties, including without limitation, the warranty of workmanlike performance, as follows:

> WARRANTY:  Company warrants to Purchaser that the services will be performed in a manner to be free from defects in workmanship and materials for a period of sixty (60) days after completion of the services.  If any failure to meet the foregoing warranty appears within sixty (60) days from the date of completion of services, and if promptly notified in writing thereof by Purchaser, Company will replace or repair the defective workmanship or materials upon the return of the equipment to the Company's yard.  Company will correct the damage to the equipment upon which service was performed either, at Company's option, by repairing or replacing any damaged part of the equipment resulting from faulty service.

> The preceding paragraph sets forth the exclusive remedy for claims based on defects  in the services, workmanship or materials furnished by Company, regardless of whether the claim is based on contract, warranty, tort (including negligence) or any other cause of action, and however instituted, and upon the expiration of the warranty period all liability for all such claims shall terminate.  The foregoing warranty is exclusive and in lieu of

all other warranties, whether written, oral, implied or statutory. The warranty provision of this quotation or the limitation thereof shall not affect any express warranty given by a manufacturer other than Company, which will apply to equipment supplied for installation or use under this contract.     PURCHASER SPECIFICALLY UNDERSTANDS AND AGREES THAT NO OTHER WARRANTIES, EXPRESED OR IMPLIED, ARE OR WILL BE DEEMED TO HAVE BEEN MADE BY COMPANY, EXCEPT THE WARRANTY HEREIN BEFORE SET FORTH IN THE   PRECEDING   PARAGRAPH.     THE   IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS OR SUITABILITY ARE SPECIFICALLY DISCLAIMED AND EXCLUDED.     COMPANY   DOES   NOT   WARRANTY EQUIPMENT OR SUPPLIES MANUFACTURED BY OTHERS.

THIS WARRANTY IS GIVEN IN LIEU OF ALL OTHER WARRANTIES.   THERE ARE NO WARRANTIES GIVEN WHICH   EXTEND   BEYOND   THE   LANGUAGE   AND DESCRIPTION ON THE FACE HEREOF.   Company does not warranty any product or services of others, which Purchaser has designated.   Unless expressly stated in the description of the service, Company does not warrant the fitness or suitability of the equipment on which the service is performed or any modification thereof, for any specific application, performance, result or use.

### Nineteenth Defense

BAE Shipyards pleads the terms and conditions of the contract existing between Carnival and BAE Shipyards, separately and severally, as a defense to the claims asserted by Carnival.

### Twentieth Defense

Carnival has failed to mitigate its damages, if any.

### Twenty-First Defense

Any damages sustained by Carnival are the result of previously existing or subsequently occurring incidents for which BAE Shipyards has no responsibility.

### Twenty-Second Defense

Some or all of Carnival's claims are barred by the doctrine of unclean hands.

11

## Twenty-Third Defense

Carnival's claims are barred by the doctrines of waiver, estoppel, acquiescence and/or ratification.

## Twenty-Fourth Defense

BAE Shipyards pleads the doctrine of open and obvious hazard or condition.

## Twenty-Fifth Defense

Carnival's alleged damages, including but not limited to compensatory damages, punitive damages, costs, expenses, and attorneys' fees are not recoverable from BAE Shipyards by law, statute, contract, or otherwise and/or under the circumstances of this case.

## Twenty-Sixth Defense

Punitive damages are not recoverable in this action, either by statute, general maritime law, or otherwise.

## Twenty-Seventh Defense

The complaint fails to state a claim for which punitive damages can be recovered against BAE Shipyards.

## Twenty-Eighth Defense

BAE Shipyards has not been guilty of any conduct that would entitle Carnival to recover punitive damages.

## Twenty-Ninth Defense

BAE Shipyards avers that any award of punitive damages to Carnival in this case would be in violation of the constitutional safeguards provided to BAE Shipyards under the Constitution of Alabama.

### Thirtieth Defense

BAE Shipyards avers that any award of punitive damages to Carnival in this case would be in violation of the constitutional safeguards provided to BAE Shipyards under the Constitution of the United States.

### Thirty-First Defense

The punitive damages sought are in excess of comparable maximums established for criminal fines by the Alabama Legislature in §§ 13A-5-11 and 13A-5-12 of the Alabama Code (1975), jointly and separately.

### Thirty-Second Defense

Each claim for punitive damages, on its face and/or as applied in this case is in violation of the Fourth Amendment of the Constitution of the United States; the Fifth Amendment of the Constitution of the United States; of the right to counsel and a fair trial provided by the Sixth Amendment of the Constitution of the United States; of the right to trial by jury of the Seventh Amendment of the Constitution of the United States; of the proportionality principles contained in the Eighth Amendment of the Constitution of the United States; the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States; and Article 1, Sections 1, 2, 6, 11, 13, 15, and 35 of the Constitution of Alabama of 1901, and is improper under the common law and public policies of the State of Alabama and under applicable court rules and statutes for the following reasons, jointly and separately:

1. The standards provided by Alabama and federal law for the imposition of punitive damages are insufficiently specific, and therefore, Defendant has not been put on notice and given the opportunity to anticipate punitive liability and/or the potential size of an award and to modify or conform his conduct accordingly;

2. Present Alabama and federal procedures permit awards of punitive damages that constitute excessive fines;

3.      Punitive damages are penal in nature and should not be imposed by civil courts or juries;

4.      The procedures to be followed would permit an award of punitive damages against Defendant upon the satisfaction of a burden of persuasion (standard of proof) less than that applicable to the imposition of criminal sanctions for equal culpability;

5.      Because punitive damages are a form of criminal or quasi-criminal sanctions, any award of punitive damages is unconstitutional absent the same protections accorded to criminal defendants, including, but not limited to, protection against unreasonable searches and seizures, the right to confront adverse witnesses, a speedy trial and effective assistance of counsel, all separately and severally;

6.      The procedures to be followed would permit the award of multiple punitive damages for the same act or omission;

7.      There are no provisions or standards for clear and consistent appellate review of any award of punitive damages against Defendant under present Alabama or federal law;

8.      The standards of conduct upon which punitive damages are sought against Defendant are vague and ambiguous and are not rationally related to any legitimate purpose;

9.      The procedures used by Alabama and federal courts and the guidelines given to the fact finders, jointly and separately, are vague and ambiguous and are not rationally related to any legitimate purpose;

10.     The procedures used by Alabama and federal courts and the guidelines given to fact finders, jointly and separately, are vague and ambiguous and thus, impermissibly delegate to jurors basic policy matters;

11.     The procedures used by Alabama and federal courts and guidelines given to fact finders, jointly and separately, are vague and ambiguous and, thus, impermissibly allow jurors broad, unlimited power and unfettered discretion to make determinations on whether to award punitive damages and, if so, on the amount to be awarded;

12.     The procedures under which punitive damages are awarded and instructions used in Alabama and federal courts, jointly and separately, are vague and ambiguous and, thus, fail to eliminate the effects of, and to guard against, impermissible passion;

13.     The procedures under which punitive damages are awarded and instructions used in Alabama and federal courts, jointly and separately, fail to guard against the

14

award of punitive damages on the basis of discriminatory characteristics such as the wealth of defendants;

14.     Present Alabama and federal law does not provide for sufficiently objective and specific standards to be used in deciding whether to award punitive damages and, if so, on the amount to be awarded;

15.     Present Alabama and federal law does not provide a meaningful opportunity for challenging the rational basis for, and any excessiveness of, any award of punitive damages;

16.     Present Alabama and federal law does not provide for adequate and independent review by the trial court and the appellate court of the imposition of punitive damages or of the amount of any punitive damages awarded;

17.     An award of punitive damages is not subject to judicial review for reasonableness and furtherance of legitimate purpose on the basis of constitutionally adequate standards of sufficient clarity, objectivity and uniformity;

18.     Present Alabama and federal law does not provide the constitutionally required balance between a defendant's interest in rational decision making and the state's interest in ensuring appropriate punishments;

19.     The present Alabama and federal procedures fail to provide a constitutional and reasonable limit on the amount of any punitive award against Defendant;

20.     The present Alabama and federal procedures may permit the admission of evidence relative to punitive damages in the same proceedings during which liability is determined;

21.     An award of punitive damages would compensate Plaintiff for elements of damage not otherwise recognized by Alabama or federal law and would enrich or compensate Plaintiff, which is an impermissible utilization of allegedly punitive damages;

22.     The present Alabama and federal procedures fail to require any rational, objective or logical relationship between either the award of or the amount of punitive damages awarded and the alleged conduct of Defendant or the compensatory damages awarded to Plaintiff, if any;

23.     An award of punitive damages in this case would permit the punishment of Defendant other than by virtue of a law established and promulgated prior to the offense and legally applied.

### Thirty-Third Defense

The award of punitive or extra-contractual damages on the basis of vicarious liability for the conduct of others violates the Fifth, Eighth and Fourteenth Amendments of the <u>Constitution of the United States</u> as well as the <u>Constitution of Alabama</u> provisions set forth above.

### Thirty-Fourth Defense

The assessment and adjudication against BAE Shipyards of any punitive damages other than those measured according to BAE Shipyards' sole, individual conduct would be improper and impermissible.

### Thirty-Fifth Defense

The imposition of punitive damages deprives BAE Shipyards of the right to equal protection under the laws provided in the Fifth and Fourteenth Amendments of the <u>Constitution of the United States</u> and in Article 1, Sections 1, 6 and 22, of the <u>Constitution of Alabama</u> of 1901 for the following reasons, jointly and separately:

1. Plaintiff seeks punitive damages in excess of the respective maximums established by the Alabama Legislature in §§ 13A-5-11 and 13A-5-12, <u>Code of Alabama</u> (1975), jointly and separately, whereas those charged under the Criminal Code for similar or identical culpability would have the benefit of the cited code provisions;

2. The procedures to be followed would permit the awarding of punitive damages against Defendant upon the satisfaction of a burden of persuasion (standard of proof) less than the applicable standard in criminal cases for criminal sanctions involving similar or identical levels of culpability;

3. The absence of sufficiently specific and objective standards for the imposition of punitive damages fails to ensure the equality of treatment between and among similarly situated defendants and, thus, may result in the imposition of disparate penalties for the same or similar acts; and

4. Punitive damages are penal in nature and defendants, without procedural protections, are compelled to disclose documents and/or other evidence without constitutional safeguards against self-incrimination whereas persons charged under criminal provisions for acts or omissions of similar culpability are protected

from being compelled to disclose documents and/or other evidence by constitutional procedures and safeguards available in criminal cases.

### Thirty-Sixth Defense

Carnival's claim for punitive damages is barred to the extent that it seeks the admission into evidence of BAE Shipyards ' net worth in determining whether punitive damages are to be awarded and/or in what amount they are to be awarded because punitive damages are a form of punishment grounded in BAE Shipyards' status rather than specific misconduct and, thus, have the effect of treating classes of citizens unequally in violation of the equal protection clause of the Fifth and Fourteenth Amendments to the Constitution of the United States and Article I, Sections 1, 6, 13 and 22 of the Constitution of Alabama.

### Thirty-Seventh Defense

To the extent applicable, BAE Shipyards is entitled to the protections afforded by sections 6-11-20 and 6-11-27 of the Alabama Code.

### Thirty-Eighth Defense

The imposition of punitive damages in this case will constitute an excessive fine in violation of the Eighth Amendment of the Constitution of the United States and Article 1, Section 15 of the Constitution of Alabama.

### Thirty-Ninth Defense

Carnival's claims for punitive damages against BAE Shipyards cannot be sustained because an award of punitive damages under Alabama or federal law for the purpose of compensating Carnival or for purposes not otherwise recognized by Alabama or federal law would violate BAE Shipyards' due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by the due process provision in the Constitution of Alabama.

## Fortieth Defense

The imposition of punitive damages in this case is unconstitutional under the due process clause of the Fourteenth Amendment of the Constitution of the United States for the following reasons, jointly and separately:

1.    The punitive damages sought in this case are vastly disproportionate to the actual damages allegedly sustained by Plaintiff;

2.    The imposition of punitive damages in this case constitutes an arbitrary and capricious taking of Defendant's property with no rationally stated purpose;

3.    Allowing an award of punitive damages with unfettered discretion is inconsistent with due process; and

4.    Such damages are vague and ambiguous and are not rationally related to any legitimate government interest.

## Forty-First Defense

The imposition of punitive damages in this case is an unconstitutional deprivation of property without the due process of law guaranteed by the Fifth and Fourteenth Amendments of the Constitution of the United States and Article 1, Section 6 of the Constitution of Alabama.

## Forty-Second Defense

The imposition of punitive damages in this case is unconstitutional under the Fifth and Fourteenth Amendments of the Constitution of the United States and Article 1, Sections 5 and 6 of the Constitution of Alabama because punitive damages are penal in nature, and BAE Shipyards is compelled to disclose documents and/or other evidence without constitutional safeguards against self-incrimination.

## Forty-Third Defense

Any award of punitive damages to Carnival in this case would be in violation of Article 1, Section 10, Clause 1 of the Constitution of the United States and Article 1, Section 22 of the Constitution of Alabama prohibiting laws which impair the obligation of contracts.

**Forty-Fourth Defense**

Present Alabama and federal punitive damages procedures allow courts to punish defendants for conduct occurring outside of the state constituting unlawful state regulation of Interstate Commerce and violation of the Interstate Commerce Clause of the <u>Constitution of the United States</u>.

**Forty-Fifth Defense**

The imposition of punitive damages in this case unconstitutionally violates the right of BAE Shipyards to access to the courts as guaranteed by the First and Fourteenth Amendments of the <u>Constitution of the United States</u>.

**Forty-Sixth Defense**

The imposition of punitive damages in this case violates the double jeopardy clause of the Fifth Amendment of the <u>Constitution of the United States</u> as incorporated into the Fourteenth Amendment of the <u>Constitution of the United States</u>.

**Forty-Seventh Defense**

Carnival's claim for punitive damages should not be submitted to the fact finder because, under the United State Supreme Court's holding in <u>Cooper Industries, Inc. v. Leatherman Tool Group, Inc.</u>, 532 U.S. 424 (2001), and the Alabama Supreme Court's holding in <u>Horton Homes, Inc. v. Brooks</u>, 832 So. 2d 44 (Ala. 2001), the issue of punitive damages is not a question of fact to be decided by the fact finder.

**Forty-Eighth Defense**

The amount of punitive damages is not a question for the fact finder to determine. The procedures used by Alabama and federal courts and the guidelines given to the fact finders, jointly and separately, are vague and ambiguous. Present Alabama and federal law does not provide for sufficiently objective and specific standards to be used by the fact finder in its

deliberations on whether to award punitive damages and, if so, on the amount to be awarded. Present Alabama and federal law does not provide for adequate and independent review by the trial court and the appellate court of the imposition of punitive damages by a fact finder or of the amount of any punitive damages awarded by a fact finder.

### Forty-Ninth Defense

To permit the imposition of punitive damages against BAE Shipyards on a joint and several liability basis is unconstitutional in that the damages are punitive in nature, yet there is no provision under Alabama or federal law for the assessment of punitive damages separately and severally against joint tortfeasors even though the damages are predicated upon the alleged enormity of the wrong committed by the tortfeasor, and would violate BAE Shipyards' right to due process and equal protection of the laws under the Fifth and Fourteenth Amendments to the Constitution of the United States, and Article I, Sections 1, 6, 13 and 22 of the Constitution of Alabama.

### Fiftieth Defense

The procedures pursuant to which punitive damages are awarded subject civil defendants to punishment for the conduct of others through vicarious liability or through non-apportionment of damages among joint tortfeasors, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, §§ 1 and 6 of the Alabama Constitution.

### Fifty-First Defense

The principles of joint and several liability and non-apportionment of punitive damages violate the proportionality principles contained in the Eighth Amendment to the United States Constitution.

**Fifty-Second Defense**

The application of joint and several liability under Alabama and federal law, prohibiting apportionment of punitive damages, violates the constitutional prohibition against vague and over broad laws.

**Fifty-Third Defense**

Allowing Alabama and federal courts to jointly and severally award punitive damages against multiple defendants who have different causes of action against them violates the due process clause of the United States and Alabama Constitutions.  CP & B Enterprises, Inc. v. Mellert, 762 So. 2d 356 (Ala. 2000).

**Fifty-Fourth Defense**

No Alabama or federal law gives a defendant notice that if he commits a certain wrong, he could be liable not only for the actual damages sustained by the plaintiff, but also for punitive damages that may have been intended by a court to punish only other co-defendants, violating defendant's right to due process under the United States and Alabama Constitutions.

**Fifty-Fifth Defense**

To permit the imposition of punitive damages against BAE Shipyards on a joint and several liability basis would violate this BAE Shipyards' rights under the Eighth Amendment to the Constitution of the United States and Article I, Section 15 of the Constitution of Alabama in that the award imposes an excessive fine against joint tortfeasors without any consideration being allowed to be given by the court to the degree of culpability each defendant had, if any.

**Fifty-Sixth Defense**

The imposition of an award of punitive damages against BAE Shipyards on a joint and several liability basis would violate BAE Shipyards' rights to due process and equal protection of

the laws under the Fifth and Fourteenth Amendments to the <u>Constitution of the United States</u>, and Article I, §§1, 6, 13 and 22 of the <u>Constitution of Alabama</u>, in that:

1.  It permits the imposition of joint and several judgments against multiple co-defendants for different acts or degrees of wrongdoing or culpability;

2.  It allows punitive damages to be assessed and imposed based on the conduct of persons or entities other than this defendant or his agents or employees and/or without apportionment of damages based on the degree of culpability of the defendants, if any;

3.  Defendant would be denied a fair opportunity to have the jury or court assess damages based on its alleged culpability which cannot be segregated from allegations against other defendants; and

4.  In failing to provide for joint contribution and an apportionment of damages among defendants, this Defendant is deprived of property without due process of law.

### Fifty-Seventh Defense

With respect to Carnival's demand for punitive damages, BAE Shipyards specifically incorporates by reference any and all standards or limitations regarding the determination and/or enforceability of punitive damages awards which arose in the decisions of <u>Exxon Shipping Co. v. Baker</u>, 128 S. Ct. 2605 (2008), <u>Cooper Industries, Inc. v. Leatherman Tool Group, Inc.</u>, 532 U.S. 424 (2001), <u>BMW of North America, Inc. v. Gore</u>, 517 U.S. 599 (1996), and the application thereof in <u>BMW of North America, Inc. v. Gore</u>, 701 So. 2d 507 (Ala. 1997), and <u>State Farm Mutual Automobile Ins. Co. v. Campbell</u>, 538 U.S. 408 (2003).

### Fifty-Eighth Defense

Any award of punitive damages in this case would be subject to scrutiny under the factors set forth in <u>Exxon Shipping Co. v. Baker</u>, 128 S. Ct. 2605 (2008), <u>Cooper Industries, Inc. v. Leatherman Tool Group, Inc.</u>, 532 U.S. 424 (2001), <u>BMW of North America, Inc. v. Gore</u>, 517 U.S. 559 (1996), and the application thereof in <u>BMW of North America, Inc. v. Gore</u>, 701 So. 2d 507 (Ala. 1997), and <u>State Farm Mutual Automobile Ins. Co. v. Campbell</u>, 538 U.S. 408 (2003).

**Fifty-Ninth Defense**

Any court making an award of punitive damages in this case must consider the factors set forth in Exxon Shipping Co. v. Baker, 128 S. Ct. 2605 (2008), Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424 (2001), and BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996), and the application thereof in Exxon Shipping Co. v. Baker, 128 S. Ct. 2605 (2008), BMW of North America, Inc. v. Gore, 701 So. 2d 507 (Ala. 1997), and State Farm Mutual Automobile Insurance Co. v. Campbell, 538 U.S. 408 (2003), in assessing constitutional punitive damages.

**Sixtieth Defense**

Any award of punitive damages in this case would be unconstitutional under Exxon Shipping Co. v. Baker, 128 S. Ct. 2605 (2008), Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424 (2001), and BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996), and the application thereof in Exxon Shipping Co. v. Baker, 128 S. Ct. 2605 (2008), BMW of North America, Inc. v. Gore, 701 So. 2d 507 (Ala. 1997), and State Farm Mutual Automobile Ins. Co. v. Campbell, 538 U.S. 408 (2003), because BAE Shipyards received no notice of the severity of the potential penalty that might be imposed as punishment under Alabama law.

**Sixty-First Defense**

Any verdict based upon Carnival's claim for punitive damages would violate BAE Shipyards' guarantee of due process and equal protection under the laws as established by the United States Constitution and the Alabama Constitution because the standards for assessing the propriety and amount of such damages violate the constitutional prohibition against vague and overbroad laws.

**Sixty-Second Defense**

Any punitive damages assessed against BAE Shipyards must be mitigated in accordance with the factors set forth in Exxon Shipping Co. v. Baker, 128 S. Ct. 2605 (2008), Cooper Industries, Inc. v Leatherman Tool Group, Inc., 532 U.S. 424 (2001), BMW of North America, Inc. v. Gore, 517 U.S. 599 (1996), BMW of North America, Inc. v. Gore, 701 So. 2d 507 (Ala. 1997), State Farm Mutual Automobile Ins. Co. v. Campbell, 538 U.S. 408 (2003), Green Oil Co. v. Hornsby, 539 So. 2d 218 (Ala. 1989), and Hammond v. City of Gadsden, 493 So. 2d 1374 (Ala. 1986), and their progeny.

**Sixty-Third Defense**

The imposition of punitive damages in this case is unconstitutional under the due process clause of the Fourteenth Amendment of the Constitution of the United States because the standards for such damages are vague and ambiguous and are not rationally related to any legitimate government interest.

**Sixty-Fourth Defense**

Carnival's claims for punitive damages against BAE Shipyards cannot be sustained because an award of punitive damages under Alabama or federal law for the purpose of compensating Carnival or for purposes not otherwise recognized by Alabama or federal law would violate BAE Shipyards' due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by the due process provision in the Constitution of Alabama.

**Sixty-Fifth Defense**

"[T]he Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties or those whom they directly represent, i.e., injury that it inflicts upon those who are, essentially, strangers to the litigation." Phillip Morris

v. Williams, 127 S.Ct. 1057, 1063 (2007).  Furthermore, "such an award would amount to a taking of 'property' from the defendant without due process." Id. at 1060.

### Sixty-Sixth Defense

"[T]he Due Process Clause prohibits a State from punishing an individual without first providing that individual with 'an opportunity to present every available defense.'"  Phillip Morris v. Williams, 127 S.Ct. 1057, 1063 (2007) (quoting Lindsey v. Normet, 405 U.S. 56, 66 (1972)).

### Sixty-Seventh Defense

The Due Process Clause prohibits punishment of a defendant based on an injury to a nonparty because such punishment "would add a near standardless dimension to the punitive damages equation." Phillip Morris v. Williams, 127 S.Ct. 1057, 1063 (2007).  Such punishment would be based on speculation and, thus, magnifies the fundamental due process concerns of "arbitrariness, uncertainty and lack of notice." Id.

### Sixty-Eighth Defense

Federal constitutional law obligates this Court to provide procedural protection against the risk of punishing this defendant for potential injuries to persons not before the Court.  Phillip Morris v. Williams, 127 S.Ct. 1057, 1065 (2007).

### Sixty-Ninth Defense

An award of punitive damages in this case, if any, may not exceed the limitations set forth in § 6-11-21 of the Alabama Code (Supp. 2002).  See Shiv-Ram v. McCaleb, No. 1012112, 2003 WL 23025586 (Ala. Dec. 30, 2003) (former § 6-11-21 was repealed by enactment of "new § 6-11-21"; Henderson v. Alabama Power Co., 627 So. 2d 878 (Ala. 1993), which declared former § 6-11-21 unconstitutional, is therefore moot).

**Seventieth Defense**

Section 6-11-21(e) of the <u>Alabama Code</u> provides that, except as provided in Section 6-11-27, no defendant shall be liable for any punitive damages unless that defendant has been expressly found by the trier of fact to have engaged in conduct, as defined in Section 6-11-20, warranting punitive damages, and such defendant shall be liable only for punitive damages commensurate with that defendant's own conduct.  <u>See, e.g., Reserve Nat. Ins. Co. v. Crowell</u>, 614 So. 2d 1005 (Ala. 1993).   There can be no award of punitive damages against BAE Shipyards in this case because: (1) alleged conduct of BAE Shipyards does not fall within Section 6-11-20; (2) to the extent culpability exists, it does not rest with BAE Shipyards; and (3) vicarious liability for punitive damages cannot exist under Section 6-11-27.

**Seventy-First Defense**

Pursuant to <u>Alabama Code</u> Section 6-11-20, an award of punitive damages must be supported by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to Carnival.  There is no such evidence in this case.

**Seventy-Second Defense**

Section 6-11-27 of the <u>Alabama Code</u> bars the imposition of vicarious liability and any award of punitive damages for said liability in the present matter.  Section 6-11-27 provides that a principal, employer, or other master shall not be liable for punitive damages for intentional wrongful conduct or conduct involving malice based upon acts or omissions of an agent, employee, or servant of said principal, employer, or master unless the principal, employer, or master either: knew or should have known of the unfitness of the agent, employee, or servant, and employed him or continued to employ him, or used his services without proper instruction with a disregard of the rights or safety of others; or authorized the wrongful conduct; or ratified

the wrongful conduct; or unless the acts of the agent, servant or employee were calculated to or did benefit the principal, employer or other master, except where Carnival knowingly participated with the agent, servant, or employee to commit fraud or wrongful conduct with full knowledge of the import of its act.

## Seventy-Third Defense

BAE Shipyards claims the benefit and limitations which are set forth in Ala. Code, § 6-11-20 to § 6-11-30, including the statutory caps and exceptions in § 6-11-21.

## Seventy-Fourth Defense

BAE Shipyards asserts that the injuries and/or damages allegedly suffered by Carnival were caused or contributed to in whole or in part by an unavoidable accident, Act of God, and/or conditions of tide, wind, or other inevitable hazard or peril of the sea, and/or by inscrutable fault.

## Seventy-Fifth Defense

Carnival's negligence, actions and/or misconduct were the sole and proximate cause of any and all injuries and damages which are alleged in the complaint, thereby precluding or diminishing Carnival's recovery pursuant to the Doctrine of Comparative Negligence.

## Seventy-Sixth Defense

Carnival has failed to join all parties necessary and indispensable to the just adjudication of this matter.

## Seventy-Seventh Defense

Carnival lacks proper standing to bring some or all of the claims stated in the complaint.

### Seventy-Eighth Defense

The incident, injuries and damages about which Carnival complains were caused and/or contributed to by other parties and/or third parties over whom BAE Shipyards had no control and for whom BAE Shipyards is not responsible.

### Seventy-Ninth Defense

The incident, injuries and damages alleged in the complaint resulted from the negligence of others over whom BAE Shipyards had no control or for whom BAE Shipyards is not responsible, which fact bars or mitigates Carnival's recovery against BAE Shipyards, if any.

### Eightieth Defense

Some or all of Carnival's claims are preempted by federal law.

### Eighty-First Defense

Under federal common law, punitive damages may not be awarded for vicarious liability.

### Eighty-Second Defense

BAE Shipyards incorporates any and all other affirmative defenses asserted or to be asserted by any present or future defendant or party to the extent that those defenses are not inconsistent with BAE Shipyards' denial of any and all liability for the alleged incident and damages resulting therefrom.

### Eighty-Third Defense

BAE Shipyards reserves the right to assert additional defenses that may arise as discovery progresses or that it otherwise becomes aware of during the course of this litigation.

### COUNTERCLAIM

BAE Shipyards asserts the following counterclaim against Carnival:

1.      BAE Shipyards is a limited liability corporation organized and existing under the laws of Delaware with a single member which is a Florida resident corporation.

2.      Upon information and belief, Counterclaim Defendant Carnival is a foreign corporation with its headquarters and principal place of business in Miami, Florida.  Carnival is the owner of the M/V CARNIVAL TRIUMPH ("TRIUMPH"), which was involved in the events giving rise to this lawsuit.

3.      This is an admiralty and maritime claim within the Court's jurisdiction pursuant to 28 U.S.C. § 1333, 46 U.S.C. § 30101, and Rule 9(h) of the Federal Rules of Civil Procedure.

4.      Venue is proper in the United States District Court for the Southern District of Alabama because a substantial part of the events giving rise to this counterclaim occurred in this district.

5.      On or about February 17, 2013, Carnival and BAE Shipyards entered into a contract pursuant to which BAE Shipyards was to provide certain services to the TRIUMPH, including a pier to moor the TRIUMPH while she underwent certain repair work performed primarily by Carnival contractors and/or subcontractors.   The pier provided to moor the TRIUMPH was Pier K, which was a safe and suitable pier.

6.      On April 3, 2013, the TRIUMPH was moored at Pier K at BAE Shipyards' facility in Mobile, Alabama.

7.      On April 3, 2013, while the TRIUMPH was moored at Pier K, a severe and extreme Act of God weather event referred to as a Wake Low occurred.  This severe and extreme Wake Low was not foreseeable, and no amount of foresight or care reasonably to have been expected could have prevented it.  During this severe and extreme Wake Low, the TRIUMPH broke free from her moorings at Pier K.

8.      After breaking free from her moorings at Pier K, the TRIUMPH is alleged to have

drifted north and then west into and across the Mobile River, and alleged to have allied with

other structures and vessels.  The TRIUMPH also is alleged to have caused or contributed to the

death of John R. "Buster" Johnson, personal injuries to Jason Alexander Ewing, both of whom

were longshoremen and employees of BAE Shipyards, alleged property damage to property

owned by Signal Ship Repair, LLC ("Signal"), alleged damage to the dredge WHEELER, which

is owned by the United States Corps of Engineers ("Corps"), and potentially other damages and

injuries which presently are unknown to BAE Shipyards.  The TRIUMPH breakaway incident

also caused damage to BAE Shipyards' facility and property, including but not limited to, Pier K,

the bollards on Pier K, and three barges under charter to BAE Shipyards.

9.      As a result of the death of John R. "Buster" Johnson, BAE Shipyards, as Mr.

Johnson's employer under the Longshore and Harbor Workers' Compensation Act ("LHWCA"),

33 U.S.C. § 901, et. seq., has paid, and will continue to pay, benefits pursuant to and in

accordance with the LHWCA, 33 U.S.C. § 901, et. seq.

10.      Furthermore, as a result of the alleged personal injuries to Jason Alexander

Ewing, BAE Shipyards, as Mr. Ewing's employer under the LHWCA, has paid, and will

continue to pay, benefits pursuant to and in accordance with the LHWCA, 33 U.S.C. § 901, et.

seq.

11.      Upon information and belief, Bernadette W. Johnson, individually and as

surviving wife and administratrix and personal representative of the Estate of John R. "Buster"

Johnson, and Jason Alexander Ewing, filed a wrongful death and personal injury action, against

Carnival in the Circuit Court of Mobile County, Alabama.  Carnival subsequently removed that

case to the United States District Court for the Southern District of Alabama, and that case is

currently pending before this Court and styled *Bernadette W. Johnson, et al., Plaintiffs v. Carnival Corporation, et al., Defendants*, Civil Action No. 13-330-N.   In that civil action, Johnson and Ewing claim that Carnival was guilty of negligence and other wrongful conduct in causing the TRIUMPH to break away from her moorings on April 3, 2013, and that Carnival is responsible and liable for the resulting death to John R. "Buster" Johnson and injuries to Jason Alexander Ewing.

12.     Signal also has filed a Counterclaim and Cross-Claims in this action through which Signal seeks recovery from Carnival, the TRIUMPH, BAE Shipyards, and others for damages allegedly sustained by Signal as a result of the TRIUMPH breakaway incident on April 3, 2013.  BAE Shipyards has filed an Answer to Signal's Cross-Claim, in which BAE Shipyards has denied any fault, wrongdoing, liability or responsibility for the alleged breakaway incident, damages and injuries, and has asserted numerous affirmative defenses.

13.     Other persons and entities, including the Corps, may file claims against Carnival, the TRIUMPH, BAE Shipyards, and others for damages and injuries allegedly resulting from the TRIUMPH breakaway incident on April 3, 2013.

14.     The TRIUMPH breakaway incident, and any alleged injuries, losses or damage resulting therefrom, were not caused or contributed to by any fault, neglect, or want of due care on the part of BAE Shipyards or anyone for whom BAE Shipyards may be responsible.

15.     Carnival was responsible for the safe mooring and berthing of the TRIUMPH. Carnival had the primary responsibility, duty and opportunity to determine the requirements of a berthing space for the TRIUMPH, to ascertain the sufficiency of Pier K as a berth for the TRIUMPH, to advise BAE Shipyards of any special requirements for berthing the TRIUMPH, to

secure the TRIUMPH properly, and to otherwise ensure the safe berthing and mooring of the TRIUMPH.

16.     If the TRIUMPH breakaway incident was not caused by an Act of God, then the TRIUMPH breakaway incident, and the alleged injuries, losses and damages resulting therefrom, were caused or contributed to by the negligence, fault and want of due care of Carnival, and those for whom Carnival is responsible, including without limitation, the Captain and crew of the TRIUMPH, in the following particulars, among others, to be proven at trial:

> (a)     Failing to safely moor the TRIUMPH;
>
> (b)     Failing to assess and determine the requirements of a berthing space for the TRIUMPH;
>
> (c)     Failing to ascertain the sufficiency of Pier K as a berthing space for the TRIUMPH;
>
> (d)     Failing to advise BAE Shipyards of any special requirements for berthing the TRIUMPH;
>
> (e)      Failing to secure the TRIUMPH properly;
>
> (f)     Failing to ensure the safe berthing and mooring of the TRIUMPH while moored at BAE Shipyards; and
>
> (g)     Other acts of negligence and wrongful conduct which caused or contributed to the TRIUMPH breakaway incident on April 3, 2013, all of which will be proven at trial.

## <u>COUNT ONE</u>

17.     BAE Shipyards adopts and incorporates by reference as if fully set forth herein paragraphs 1 through 16 of its Counterclaim.

18.     If the TRIUMPH breakaway incident was not caused by an Act of God, then the TRIUMPH breakaway incident, and any alleged injuries, damages, and losses resulting therefrom, were caused solely by the active and primary negligence and wrongful conduct of

Carnival, and not by any negligence or wrongful conduct of BAE Shipyards. Alternatively, based upon the relationship between Carnival and BAE Shipyards, to the extent there was any negligence by BAE Shipyards, which is denied, any such negligence was merely passive, secondary, and/or technical, and not primary, active or the proximate cause of the breakaway incident. Accordingly, BAE Shipyards is entitled to indemnity from Carnival for any amounts for which it may be found liable to pay to any person, entity or party as a result of the breakaway incident, plus costs, expenses and attorneys' fees.

19.     Alternatively, if Signal, or any other party who/which may file a claim against BAE Shipyards is successful in proving that the TRIUMPH breakaway incident and the alleged resulting damages and injuries were caused or contributed to by the negligence, fault, or wrongful conduct of BAE Shipyards, which is strictly and completely denied, and if BAE Shipyards is compelled to pay any amount in excess of the amount attributable to its percentage of fault, then BAE Shipyards will be entitled to contribution from Carnival for that excess amount.

20.     BAE Shipyards seeks the relief requested in the Prayer for Relief at the end of the Counterclaim.

## COUNT TWO

21.     BAE Shipyards adopts and incorporates by reference as if fully set forth herein the allegations of paragraphs 1 through 20 of its Counterclaim.

22.     If the TRIUMPH breakaway incident was not caused by an Act of God, then as a proximate result of the negligence, fault, and want of due care of Carnival, BAE Shipyards sustained damage to its Mobile shipyard facility and property, including without limitation, damage to Pier K, the bollards on Pier K, and three barges under charter to BAE Shipyards. The

precise amount of damage sustained by BAE Shipyards is presently unknown, but will be proven at trial.

23.     BAE Shipyards seeks the relief requested in the Prayer for Relief at the end of the Counterclaim.

## COUNT THREE

24.     BAE Shipyards adopts and incorporates by reference as if fully set forth herein the allegations of paragraphs 1 through 23 of its Counterclaim.

25.     If the TRIUMPH breakaway incident was not caused by an Act of God, then as a proximate result of the negligence, fault, and want of due care of Carnival, BAE Shipyards has paid and continues to pay benefits pursuant to the LHWCA as a result of the death of John R. "Buster" Johnson and the personal injuries to Jason Alexander Ewing.

26.     Pursuant to the provisions of the LHWCA, including without limitation, 33 U.S.C. §§ 905 and 933, BAE Shipyards has a lien for all amounts which it has paid pursuant to the LHWCA, and is entitled to full and complete reimbursement or recoupment of any and all amounts which it has paid or will in the future pay pursuant to the LHWCA as a result of the death of John R. "Buster" Johnson and personal injuries to Jason Alexander Ewing.

27.     BAE Shipyards seeks the relief requested in the Prayer for Relief at the end of the Counterclaim.

## PRAYER FOR RELIEF

WHEREFORE, BAE Shipyards prays as follows:

1.     That judgment be entered in favor of BAE Shipyards and against Carnival, requiring Carnival to indemnify BAE Shipyards from and against any and all liabilities,

damages, costs, expenses and fees, including attorneys' fees, which BAE Shipyards has incurred or will incur as a result of the TRIUMPH breakaway incident and any claims resulting therefrom.

2.      Alternatively, that judgment be entered in favor of BAE Shipyards and against Carnival for any amount that BAE Shipyards is ultimately held liable to pay to any person, entity or party arising out of the TRIUMPH breakaway incident in excess of any amount attributable to any percentage of fault of BAE Shipyards.

3.      That judgment be entered in favor of BAE Shipyards and against Carnival for all damages sustained by BAE Shipyards as a result of the TRIUMPH breakaway incident, including without limitation, damage to BAE Shipyards' facility and property, including Pier K, the bollards on Pier K, and three barges under Charter to BAE Shipyards.

4.      That judgment be entered in favor of BAE Shipyards and against Carnival for all amounts which have been paid or will be paid by or on behalf of BAE Shipyards under the LHWCA as a result of the death of John R. "Buster" Johnson and personal injuries to Jason Alexander Ewing.

5.      That BAE Shipyards may have such other, further and different relief as justice may require.

Respectfully submitted,


/s/ Brian P. McCarthy
Brian P. McCarthy (MCCAB7434)
bmccarthy@mcdowellknight.com
S. Fraser Reid, III  (REIDS7483)
freid@mcdowellknight.com
*Attorneys for BAE SYSTEMS SOUTHEAST*
*SHIPYARDS ALABAMA LLC*

OF COUNSEL:
**MCDOWELL KNIGHT ROEDDER**
  **& SLEDGE, LLC**

11 North Water St., Ste. 13290
Mobile, Alabama  36602
(251) 432-5300
(251) 432-5303 (fax)

## CERTIFICATE OF SERVICE

    I hereby certify that on September 9, 2013, the foregoing document was electronically filed with the Clerk of this Court using the CM/ECF system which will send notification of such filing to the following:

Mary Campbell Broughton
FOWLER RODRIGUEZ
Post Office Box 40008
Mobile, Alabama 36640
*Attorney for Plaintiff*

David A. Bagwell
Post Office Box 2126
Fairhope, Alabama 36533
*Attorneys for Defendants
Bernadette Johnson and Jason
Ewing*

Antonio J. Rodriguez
George J. Fowler, III
A. T. Chenault
Michael A. Harowski
FOWLER RODRIGUEZ
400 Poydras Street, 30th Floor
New Orleans, Louisiana 70130
*Attorney for Plaintiff*

George W. Finkbohner, III
Toby D. Brown, Esquire
CUNNINGHAM BOUNDS
Post Office Box 66705
Mobile, Alabama 36660
*Attorneys for Defendants
Bernadette Johnson and Jason
Ewing*

Paul T. Beckmann, Esq.
Norman M. Stockman, Esq.
HAND ARENDALL LLC
P. O. Box 123
Mobile, Alabama  36601
*Attorneys for Signal Ship Repair,
LLC*

Michael D. DiLauro, Esq.
Aviation & Admiralty Litigation
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 14271
Washington, D.C.  20044-4271
*Attorney for U.S. Army Corps of
Engineers*

A. Danner Frazer, Jr.
Michael Upchurch
Mary Margaret Bailey
Jay N. Robinson
FRAZER GREENE UPCHURCH & BAKER, LLC
P. O. Box 1686
Mobile, Alabama 36633
*Attorneys for Defendant BAE Systems SSY Alabama Property Holdings, LLC*

/s/ Brian P. McCarthy