IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CARNIVAL CORPORATION, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CA 13-0314-CG-C |
| | * | |
| BAE SYSTEMS SSY ALABAMA PROPERTY HOLDINGS, LLC., et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |
| SIGNAL SHIP REPAIR, LLC, | * | |
| | * | |
| Counter- and Cross-Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| CARNIVAL CORPORATION, BAE SYSTEMS SSY ALABAMA PROPERTY HOLDINGS, LLC, BAE SYSTEMS SOUTHEAST SHIPYARDS ALABAMA LLC, *in personam*, and M/V CARNIVAL TRIUMPH, her engines, tackle, gear, appurtenances, and all accessories thereto, *in rem*, | * | |
| | * | |
| Counter- or Cross-Defendants. | * | |
| | * | |
| AND | * | |
| | * | |
| BERNADETTE W. JOHNSON, etc., et al., | * | |
| | * | CA 13-0330-CG-C |
| Plaintiffs, | * | |
| | * | |
| vs. | * | |
| | * | |
| CARNIVAL CORPORATION, et al., | * | |
| | * | |
| Defendants. | * | |

**EXHIBIT A**

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| | * |
| Plaintiff, | * |
| | * |
| | *   CA 13-0472-CG-C |
| vs. | * |
| | * |
| CARNIVAL CORPORATION; BAE | * |
| SYSTEMS SSY ALABAMA PROPERTY | * |
| HOLDINGS, LLC; BAE SYSTEMS | * |
| SOUTHEAST SHIPYARDS ALABAMA | * |
| LLC, *in personam;* and M/V CARNIVAL | * |
| TRIUMPH, her engines, tackle, gear, | * |
| appurtenances, and all accessories thereto, | * |
| *in rem,* | * |
| | * |
| Defendants. | * |
| | * |

## DECLARATION OF A. DANNER FRAZER, JR.

I declare under penalty of perjury under the laws of the United States of America that the following are true and correct:

1. My name is Danner Frazer. I have personal knowledge of the facts described herein. I make this declaration while located in Bayeux, France and have asked my secretary to notarize it in my absence, and ask the Court to accept it in the absence of an original signature. I submit this information as an officer of the Court and declare that it is true.

2. I am 70 years old, a member of the Mobile, Alabama and American Bar Associations, having been admitted to the Bar in 1972. I am a Fellow in the American College of Trial Lawyers and the International Academy of Trial Lawyers. I am a past president of the Alabama Defense Lawyers Association and the Alabama chapter of the American Board of Trial Lawyers.

3. The discovery in this case has been marked by cooperation among all parties. Carnival Corporation has produced three witnesses for deposition, with the other parties agreeing

to travel to New Orleans, LA for two of them and to Canada to depose Captain Angelo Los, the captain of the Triumph at the time of the breakaway that is the basis for this lawsuit. BAE Systems Southeast Shipyards Alabama, LLC ("BAE Shipyards") has voluntarily produced four witnesses for deposition in Mobile, AL. Three of those witnesses were identified by Carnival as having knowledge about maintenance of the pier from which the Triumph broke away and the other was involved in creating the contract between Carnival and BAE Shipyards.

4. At the conclusion of the last of those BAE Shipyard employee depositions, Toby Brown, counsel for Plaintiffs Bernadette W. Johnson and Jason Alexander Ewing, asked for the deposition of Ian Graham, and as the stated basis for the deposition said that Mr. Graham is one of the named managers of BAE Systems SSY Alabama Property Holdings, LLC ("BAE Property"). He also called attention to the fact that Mr. Graham had signed a letter commenting on the state of maintenance of BAE Shipyards' assets. That letter was written at a time when BAE Systems Ship Repair, Inc. was planning to acquire the limited liability companies which are currently named BAE Systems SSY Alabama Property Holdings, LLC and BAE Systems Southeast Shipyards Alabama, LLC. Mr. Graham signed that letter on behalf of BAE Systems Ship Repair, Inc.

5. After Mr. Brown's request, I learned that Mr. Graham is the General Counsel for BAE Systems, Inc. At the time he signed the letter referenced above, Mr. Graham was a Deputy General Counsel and was acting in that capacity in signing the letter on behalf of BAE Systems Ship Repair, Inc., as part of the acquisition of BAE Shipyards and BAE Property. At the time, Mr. Graham had not yet been named a manager of either entity.

6. I called Mr. Brown and told him that Mr. Graham was the General Counsel, had no first-hand knowledge of the condition of the pier involved in the breakaway and had little

relevant information for this lawsuit. Carnival had previously asked for a 30(b)(6) deposition from BAE Property, but had not suggested the subjects of such a deposition. I asked Mr. Brown to consider a 30(b)(6) deposition to obtain the information he sought and to then reconsider whether the deposition of Mr. Graham is necessary. I also told him that BAE Property may have to resist the deposition of Mr. Graham, and that he would probably have to subpoena Mr. Graham for a deposition in Washington, D. C. Mr. Brown made no assertion at that time that his clients had a right to take the deposition in Mobile, AL.

7. Later, Mr. Brown again contacted me and requested the deposition of Mr. Graham and asked that we bring Mr. Graham to Mobile, AL for the deposition. I believe this communication was in a letter but do not have access to my files at this time to confirm that fact. I took it as implied that Mr. Brown had considered the 30(b)(6) idea and had decided against it. I therefore contacted Mr. Graham and obtained his tentative agreement to appear for a deposition in Mobile, AL on October 7, 2014, a date later agreed upon by all counsel. I called Mr. Brown and offered to bring Mr. Graham to Mobile, AL, but also asked that Mr. Brown consider some form of agreement to limit the scope of the deposition because his basis for the deposition was limited to two specific facts (Mr. Graham was designated as a manager of both BAE Shipyards and BAE Property and signed a letter commenting on the condition of certain BAE Shipyard assets) and because Mr. Graham's position as General Counsel raised the probability of numerous objections based upon attorney-client privilege and confidentiality of information known to Mr. Graham. Mr. Brown expressed reservations about his ability to reach such an agreement but did not entirely reject the possibility. It is my impression that all parties were, at that time, acting in good faith.

8. Subsequent to my last conversation with Mr. Brown on the subject, he served upon all counsel a Notice of Deposition which included a "duces tecum" for production by Mr. Graham at the deposition of a wide ranging set of documents. This "duces tecum" was not part of our agreement to bring Mr. Graham to Mobile, AL for his deposition and surprised me. I would never have agreed to the deposition as noticed, including the "duces tecum." I can assure the Court that BAE Property fully intends to comply with this Court's Order of August 25, 2014 which requires Mr. Graham to appear to give his deposition testimony without being subpoenaed to do so. I am still of the opinion, however, because there is a recognized distinction between a 30(b)(1) deposition and that of a corporate designated (30(b)(6) deposition, that absent a subpoena to Mr. Graham, he would have no obligation to produce documents at his deposition. See Stone v. Morton International, Inc., 170 F.R.D. 498 (D. Utah 1997) (recognizing the difference between a deposition of an individual and a deposition of a corporation under Rule 30(b)(6), and requiring that a party first pursue a 30(b)(6) deposition before deposing a particular individual). BAE Property will, of course, comply with all court orders but would like to have an opportunity to preserve its argument on the issue.

9. Because of the "duces tecum," and the fact that it was outside the scope of my agreement with Mr. Brown, BAE Property objected to the deposition of Mr. Graham, and specifically to the "duces tecum." I believed that my client was obligated to object within a reasonable time pursuant to Rule 32(d)(1) of the Federal Rules of Civil Procedure. Because of the broad scope of the "duces tecum" and our inability to obtain an agreement limiting the scope of the deposition, it was necessary to hold numerous discussions with lawyers working for Mr. Graham in order to determine the precise form of our objection. During much of this time, I was

unavailable because of preparation for a jury trial in the Circuit Court of Mobile County, Alabama, but was aware of the objection.

10. I have read the Court's August 25th Order overruling BAE Property's objection to Mr. Graham's deposition. As I understand it, the order appears to contemplate objections at the deposition based upon privilege. It does not address the specific objections to the "duces tecum." As I understand the Order, it equates the deposition notice for Mr. Graham to a notice of the LLC entity which is a party to this case. However, the "duces tecum" seeks a broad range of documents. We have not yet had an opportunity to review all potentially responsive documents in Mr. Graham's possession or to create a privilege log, although we have been diligently working to that end since we received the "duces tecum". We believed that the date for production of these documents was the date specified in the "duces tecum," i.e. the date of Mr. Graham's deposition.

11. On September 8, 2014, we served, on behalf of BAE Property, an objection to the "duces tecum." We believed that this objection might have been required by Rules 30 and 34 because of the Court's apparent conclusion that the deposition notice to Mr. Graham was equivalent to a notice to the LLC party to the litigation, and because the original deposition notice was served on August 6, 2014. Since the original notice, the parties have agreed to reschedule the deposition for October 9, 2014. By their specific terms, the original and subsequent notices call for production at the deposition, and not at any time before. However, in an effort to be cautious we filed an objection for the specific purpose of avoiding the waiver of any objection. When we filed that objection, we still had not collected or reviewed all potentially responsive documents in Mr. Graham's possession and had not made any of the hard decisions that would need to be made in order to comply with Plaintiffs' request that Mr.

6

Graham bring the requested documents to his deposition on October 9. The objection was filed in an abundance of caution simply to preserve arguments and expressly stated that all non-objectionable responsive documents would be produced. There had been no request for a privilege log at that point.

12. I was in trial in the Mobile County case from Monday August 18 through Friday August 29, and spent essentially every waking moment on that case during that time and during the preceding weeks. The one exception was the weekend prior to August 4, which I spent celebrating my 70th birthday with four grandchildren and at a party that my wife was kind enough to give in my honor. I have had plans for about nine months or more to attend the American College of Trial Lawyers meeting in London and Paris, and to take a follow-up trip to Normandy to tour the battlefield sites. I departed for this long-planned trip on September 10 and will return to Mobile late on the night of September 21.

13. Since departing Mobile, I have been made aware of Plaintiffs' Motion for Sanctions or to Compel. At no time has BAE Property failed to comply with any order or rule. We intend to produce Mr. Graham, as ordered and agreed on, to give his deposition testimony on October 9 (although we would like to continue to preserve our arguments that the "duces tecum" is not properly issued and that it is improper to require production of documents that were not received or created by Mr. Graham in his role as a manager of BAE Property). We intend to make specific objections at the deposition, as I understand the Court's order contemplates. We had also intended to produce at the deposition those documents which we understand to have been requested and to which we have no specific objection. As stated above, we are in the process of collecting and reviewing those documents, but have not had an opportunity to complete that process as of today.

14. I appreciate the opportunity to address BAE Property's position on the issue of the "duces tecum" and understand the Court's frustration, which is based on Plaintiffs' side of the story. BAE Property has done nothing of which I am aware to warrant punishment. Mr. Graham, who is not a party to this case, has done nothing other than agree to appear in Mobile for a deposition, which he did well before the Court entered any order requiring his appearance. He currently plans to appear as ordered. When Mr. Graham agreed to the deposition, we had not agreed, nor been requested to agree, to produce a single page of documents. I find it especially disturbing that Plaintiffs, after reaching an agreement for the deposition of Mr. Graham that did not include document production, are now attempting through their recently filed motion to take advantage of that agreement to obtain a wide range of documents and to prevent Defendants from having an opportunity to raise legitimate objections. BAE Property has only done what it thought was reasonably necessary to avoid waiving any objection and in doing so has neither refused to produce non-objectionable responsive documents nor failed to comply with any order of this Court.

15. My position is that I, Mr. Graham and my client, BAE Property, have acted in good faith in this matter from the first discussion of the Graham deposition until now. I offer this explanation in hopes that the Court will reconsider its Orders requiring that Defendants produce documents and a privilege log at the September 22 hearing without having had any opportunity to respond to Plaintiffs' motion for sanctions or to compel.

I am making this declaration under penalty of perjury pursuant to 28 U.S.C. § 1746 in Bayeux, France this 19th day of September, 2014.

                                                s/A. Danner Frazer, Jr.(with express permission)
                                                A. DANNER FRAZER, JR.

**STATE OF ALABAMA** )

**COUNTY OF MOBILE** )

    I, the undersigned authority, a Notary Public in and for said county and said state, hereby certify that A. DANNER FRAZER, JR., whose name is signed to the foregoing declaration, and who is known to me, acknowledged before me, via telephone while in Bayeux France and with express permission on this day that, being informed of the contents of the foregoing, he executes by electronic signature, the same voluntarily on the day the same bears date.

    Given under my hand, this 19th day of September, 2014.

                                                                                                   _____
                                                                                                  NOTARY PUBLIC

                                                                My Commission Expires: 7/23/16

NOTARIAL SEAL